AO 91 (Rev. 11/11)  Criminal Complaint   (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Ohio

| | | |
|---|---|---|
| United States of America<br>v.<br>JUSTUS RUBY<br><br>*Defendant(s)* | ) ) ) ) ) ) ) | Case No.  3:21MJ282 |

FILED
RICHARD W. NAGEL
CLERK OF COURT
**7/27/2021**

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 26, 2021__ in the county of __Montgomery__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1)/(b)(1)(A)(viii) | Possession with Intent to Distribute 50 grams or more of methamphetamine |

This criminal complaint is based on these facts:
See attached affidavit of Joshua Hilderbran.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Joshua Hilderbran, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__FaceTime__ *(specify reliable electronic means)*.

Date: __7/27/21__

_____
*Judge's signature*

City and state: __Dayton, Ohio__      Hon. Sharon L. Ovington, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Joshua D. Hilderbran, hereby duly sworn, declare and state:

### I.

### INTRODUCTION

1. I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA"). I therefore am an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 21 U.S.C. § 878.

2. I have been employed as a Special Agent by the United States Department of Justice, DEA, since January 2011 and I am currently assigned to the DEA Dayton Resident Office (DRO). In January 2011, I reported to DEA Basic Agent Training in Quantico, Virginia. In May 2011, I completed the 17-week Basic Agent Training Academy at the DEA Justice Training Center in Quantico, Virginia. While attending Basic Agent Training, I received instruction on topics including narcotics identification, surveillance techniques, methods of operation of narcotics traffickers, law, evidence handling, undercover operations, current trends/patterns involving the distribution of narcotics, as well as other areas of drug enforcement. Prior to my employment with the DEA, I served as an Officer/Counter Sniper with the United States Secret Service, Uniform Division in Washington, D.C. from June 2007 to January 2011.

3. During my career with the DEA, I have participated in multiple controlled substances investigations, involving marijuana, cocaine, heroin, methamphetamine, fentanyl, and prohibited pharmaceuticals. I have investigated financial crimes to include; money laundering, structuring habits, and bulk cash smuggling. I have interviewed numerous subjects/defendants involved in and/or arrested for drug violations and I have participated in several joint interagency federal and state investigations. I have acted in an undercover capacity in furtherance of illegal

drug investigations. Additionally, I have supervised the use of confidential sources; conducted physical surveillance; and monitored/reviewed recorded conversations of drug traffickers. I have participated in multiple Title III investigations by monitoring lines, supervising monitors, and conducting surveillance to substantiate the Title III interceptions. During the course of these interceptions, I have become familiar with coded terminology utilized by drug trafficking organizations to disguise their illegal activities and the manner in which they conduct these illegal activities. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the activities of drug smugglers and drug trafficking distribution networks including the use of communication facilities such as the United States Post Office and FedEx to ship both narcotics and United States Currency associated with the narcotics trafficking activities. During the conduct of my official duties, I have authored various affidavits to include, but not limited to: search warrants and criminal complaints.

## II.

## PURPOSE OF AFFIDAVIT

4. I make this affidavit in support of a criminal complaint against, and an arrest warrant for, Justus RUBY for Possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1)/ (b)(1)(A)(viii)

## III.

## PROBABLE CAUSE

5. In October 2020 the Drug Enforcement Administration commenced an investigation into the drug trafficking activities of an organization suspected of distributing methamphetamine in the greater Dayton, Ohio area.

6. On January 29, 2021, UC 1, a law enforcement officer, established telephonic

communications with 937-607-7477. On this date, UC1 purchased methamphetamine from Justus RUBY. During early surveillance, investigators observed RUBY, wearing dark jeans and a purple hoodie, exit his apartment at 711 W. Wenger Rd., #217, Englewood, Ohio. RUBY entered a white Chevrolet Equinox, North Carolina license plate, HEW2793, registered to Avis Budget Rental, and depart. A subsequent Administrative Subpoena to Avis revealed RUBY as the renter of the Equinox on this date. Surveillance was maintained on RUBY and the Equinox as it traveled to the apartments of Kensington Square Apartments, 700 Keswick Cir. Trotwood, Ohio. Prior to arriving at Kensington Square, telephonic contact was made between RUBY and UC1, wherein, RUBY told UC1 he was grabbing the, "Shit" for UC1. In the aforementioned apartment complex, investigators observed RUBY stop and park in a small lot on the southwest side of the Kensington Square Apartments. At the Kensington Square Apartments, it is unclear to investigators if RUBY had exited the Equinox. The area where RUBY was parked was later determined to be in the immediate area of the 715 Hallworth Pl., Trotwood, Ohio.

7. Subsequently on the same date, RUBY departed the area of 715 Hallworth Pl., Trotwood, Ohio, and surveillance observed the Equinox meet car door to door with UC1 and another law enforcement officer, who was also acting in a undercover capacity. This meeting occurred near 101 W. Worley Ave., Trotwood, Ohio. Per UC1, it was at that time, the driver of the Equinox proceeded to exchange the negotiated three ounces of suspected methamphetamine in an exchange for $1,400.00. Per UC1, during the exchange, he/she did not positively identify RUBY as the driver of the Equinox; however, UC1 observed the driver as a black male wearing a purple hoodie. Following the transaction, surveillance lost visual of the Equinox for a short time before reestablishing visual back at RUBY's apartment, 711 W. Wenger Rd., Englewood, Ohio. At the apartment, investigators observed RUBY wearing the previously mentioned purple hoodie, exit

the Equinox and enter his apartment building through the south side communal door.

8. On the same date, the suspected meth was transported to the Dayton Resident Office where it field tested presumptive positive for meth and was subsequently submitted to the Northcentral Laboratory for analysis and storage.

9. On July 14, 2021, at approximately 10:19 a.m., your Affiant received a GPS locate for 937-607-7477, indicating the phone was in the area of Justus RUBY's apartment, 711 W. Wenger Rd., #217, Englewood, Ohio, with an approximate radius of 593 m. Based on that, your affiant established surveillance on the apartment. Parked in the lot was a black 2021 Chevrolet Malibu, Ohio license plate, JHR1471, registered to PV Holdings. An Administrative Subpoena submitted to Avis Budget/PV Holdings revealed RUBY as the renter for the Malibu. Shortly after, your Affiant observed RUBY wearing a white t-shirt, gray pants, and a black do-rag head covering exit the south side entrance of his apartment, enter the Malibu, and depart. Surveillance was maintained on RUBY as he traveled to the 715 Hallworth Pl., Trotwood, Ohio. At approximately 11:05 a.m., your Affiant observed RUBY back into a spot near the front door of 715 Hallworth Pl., Trotwood, Ohio, exit the Malibu, and enter 715 Hallworth Pl., Trotwood, Ohio. A few minutes later, your Affiant observed RUBY exit 715 Hallworth Pl., Trotwood, Ohio and depart in the Malibu. The Malibu traveled west on Shiloh Springs Rd. and then south on Seybold Rd., Trotwood, Ohio. SA David Ashley observed the Malibu on the side of the road facing northbound. The Malibu was parked beside a light-colored SUV with an Indiana license plate, driven by an unknown white male, facing southbound. SA Ashley observed the plate to be NJB983; however, a law enforcement database check from the plate returned negative for a registered owner. Investigators surmise SA Ashley misread the plate. Additionally, SA Ashley observed, a south facing blue Chevrolet Cobalt with Indiana license plate, 669DFO, on the

southbound berm, driven by a white female with three other occupants in the vehicle.

10. Immediately, SA Ashley observed the Malibu depart from the SUV then turn around and go south bound on Seybold Rd. The light-colored SUV turned around northbound and departed the area. Surveillance was not maintained on the light-colored SUV. Investigators then observed the black Malibu park in the middle of the roadway beside the blue Cobalt. Based on SA Ashley's training and experience, the nature of the case, and prior dealings with RUBY, SA Ashley believed that he was observing car-to-car drug transactions.

11. SA Ashley continued to Wolf Creek Pike and turned around then headed back northbound on Seybold Rd. At or around that time, SA Ashley observed the blue Cobalt still parked on the side of the street and the Impala had departed the area. SA Ashley continued to Shiloh Springs Rd. and waited for the Cobalt to return northbound. A short time later, SA Ashley observed the Cobalt drive west on Shiloh Springs and surveillance was initiated on the Cobalt at that time. Simultaneously, your Affiant re-established surveillance on the Malibu as it traveled east on Shiloh Springs Rd. Your Affiant maintained surveillance on the Malibu as it returned to the 715 Hallworth Pl., Trotwood, Ohio. A few minutes later, your Affiant observed RUBY exit the Malibu and enter the 715 Hallworth Pl., Trotwood, Ohio. At that time, your Affiant terminated surveillance at 715 Hallworth Pl., Trotwood, Ohio to assist SA Ashley in surveilling the Cobalt.

12. On the same date, pursuant to SA Ashley's observations wherein, the Malibu conducted two brief vehicle car to car meets, SA Ashley contacted Ohio State Highway Patrol (OSHP) Trooper Jerrod White, who was on patrol in the area of highway 70, requesting assistance on a traffic stop of the Cobalt. According to SA Ashley, the request to traffic stop the Cobalt was derived from SA Ashley's training and experience wherein the brief door to door meets can often

be associated with drug transactions. At approximately 11:50 a.m., Trooper White conducted a traffic stop on the Cobalt in the area of mile marker 3, highway 70, near New Westville, Ohio. During the traffic stop, Troopers White and Kyle Pohlabal, who had arrived to support Trooper White, removed four occupants from the vehicle and verbally advised said occupants of their Miranda rights. Subsequently, the front passenger of the Cobalt, admitted to possessing a, "Ball of Fetty" in her underwear. Based on training and experience, your Affiant knows the term, "Ball" is used to describe an eighth of an ounce and, "Fetty" is short for fentanyl. The front seat passenger further indicated that they had purchased the suspected fentanyl for $200.00, from a black male, known as Jose. At that time, the front seat passenger willingly transferred the suspected fentanyl to investigators.

13. Additionally, the driver of the Cobalt indicated they had met with a black male identified as Jose, wearing a black do-rag, driving a black car. The driver further stated Jose provided his phone number of 937-607-7477 to the driver during the meet. At that time, the driver consented to your Affiant and SA Ashley to review the contents of her phone. Your affiant observed a contact in her phone identified as, "Jose D Town" associated with 937-607-7477. Both the driver and front seat passenger advised the deal with "Jose" was set up before they left Indiana. They did not provide more information as to who set up the deal.

14. Following the encounter, all four occupants were released pending further investigation. The suspected fentanyl was transported to the Dayton Resident Office where it field tested presumptive positive for fentanyl and was later submitted to the Northcentral Laboratory for storage and analysis.

15. On July 19, 2021, investigators obtained a federal search warrant for 715 Hallworth Pl., Trotwood, Ohio. This warrant was sworn before the Honorable Magistrate Judge Sharon L.

Ovington. This residence was identified during surveillance of investigative target, RUBY, as being a drug stash house.

16.     On July 25, 2021, UC1 contacted the user of 937-607-7477, later determined to be in the possession of RUBY. During a series of exchanged text messages, the UC stated, "Ned som cream". RUBY, asked, "How much"? UC1 replied, "Liokin ta spend $1500". Subsequently, RUBY advised UC1 that he/she could get, "4 and a quarter." Based on training and experience and the context of the conversation, your Affiant knows the term, "cream" is often used as coded language to describe methamphetamine. Additionally, your Affiant knows, "4 and a quarter" refers to the amount of the negotiated methamphetamine.

17.     On July 26, 2021, investigators, with the assistance of a federal search warrant authorized GPS location data for 937-607-7477, established surveillance on RUBY's apartment, 711 W. Wenger Rd., #217, Englewood, Ohio. At or around that time, the aforementioned target phone 937-607-7477, possessed a GPS locate in the same area of RUBY's apartment, with an approximate radius of 593 m. Simultaneously, investigators established surveillance at 715 Hallworth Pl., Trotwood, Ohio, in anticipation of executing the previously mentioned federal search warrant at 715 Hallworth pl., Trotwood, Ohio.

18.     After surveillance was established, UC1 contacted RUBY, using 937-607-7477, indicating he/she was in the Dayton, Ohio area. RUBY proceeded to direct UC1 where to travel. Soon after, investigators observed RUBY exit 711 W. Wenger Rd., #217, Englewood, Ohio, through the south side communal door. RUBY entered a black Chevrolet Malibu, Ohio plate JHR1471, registered to PV Holdings and depart. A previous Administrative Subpoena to PV Holdings revealed RUBY as the renter of the Malibu.

19.     As the Malibu traveled south on Union Rd., in the area of Clayton, Ohio, Ohio

State Highway Patrol (OSHP) initiated a traffic stop on the Malibu based on dark window tint and in addition to the aforementioned telephone conversations. RUBY, who was operating the Malibu, stopped in the parking lot of Casey's Gas Station, 6703 Salem Ave., Clayton, Ohio.

20. During the traffic stop, RUBY was placed in the rear of the marked OSHP vehicle. Your Affiant, as witnessed by a DEA task force officer, advised RUBY of his *Miranda* rights, at which time he agreed to speak with investigators. At that time, your Affiant asked RUBY if he was familiar with 715 Hallworth Pl., Trotwood, Ohio. RUBY confirmed he was familiar with the location. Your Affiant advised RUBY that a federal search warrant had been obtained and was going to be executed on that date. Your Affiant asked if there were kids, drugs, and/or weapons present at 715 Hallworth Pl., Trotwood, Ohio. RUBY replied something to the effect that there should not be. Additionally, during the traffic stop and search incident to arrest, investigators acquired three cell phones. One of the three cellphones, was a black Verizon Kyocera, which was obtained from the glove box of the Malibu. When questioned about the Kyocera phone, RUBY indicated he had no knowledge of the phone and that it did not belong to him. Subsequently, at the DEA Dayton Resident Office (DRO), investigators dialed phone number 937-607-7477, at that time, the Kyocera proceeded to ring in the presence of your Affiant and investigators. Additionally, previous Administrative Subpoenas submitted to Verizon revealed phone number 937-607-7477 returns to a Kyocera phone. Prior to departing the traffic stop, your Affiant asked RUBY if he possessed a key to 715 Hallworth Pl., Trotwood, Ohio, and RUBY confirmed he did have a key to 715 Hallworth Pl., Trotwood, Ohio. At that time, RUBY provided a key to your Affiant.

21. Following the traffic stop of RUBY, investigators executed the previously mentioned federal search warrant at 715 Hallworth Pl., Trotwood, Ohio. After the "Knock and

Announce" investigators proceeded to make entry into the apartment using the aforementioned key provided by RUBY. At the door, investigators encountered a female, who RUBY identified as his girlfriend. After the apartment was secured, a search of the apartment commenced. During the search of 715 Hallworth Pl., Trotwood, Ohio, investigators discovered an assortment of suspected narcotics and paraphernalia to include, but not limited to: a scale and an assortment of clear plastic baggies containing residues of unknown powders. Additionally, investigators seized a clear plastic baggy of suspected methamphetamine which weighs approximately 64.5 gross grams. At the DRO, investigators field tested the suspected methamphetamine, which yielded a presumptive positive result. The aforementioned clear plastic baggies containing the unknown powders where prepackaged in a manner consistent for resale and/or distribution. During additional questioning of RUBY, he denied having knowledge of the contents seized from 715 Hallworth Pl., Trotwood, Ohio. Prior to executing the search warrant at RUBY's apartment, he stated that there was a firearm on the nightstand in his bedroom. He also admitted that the apartment, 711 W. Wenger Rd, #217, Englewood, Ohio, was his apartment.

22. After the execution of the search warrant at 715 Hallworth Pl., Trotwood, Ohio, the D.E.A. applied for a search warrant for RUBY's apartment, 711 W. Wenger Rd, #217, Englewood, Ohio. This warrant was authorized by the Honorable Magistrate Judge Sharon L. Ovington. In RUBY's apartment investigators seized one firearm, an assortment of ammunition, and an undetermined amount of bulk United States currency pending an official count.

23. Further, RUBY's criminal history appears to indicate that he has prior law enforcement encounters in 2020 for possession of drugs, obstructing official business, and resisting arrest in the Montgomery County, Ohio area.

24.

25. In summary, your Affiant believes RUBY, on July 26, 2021 has committed the offense of Possession with Intent to Distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1)/ (b)(1)(A)(viii).

_____
Joshua D. Hilderbran
Special Agent
Drug Enforcement Administration

Sworn and subscribed before me on the ___27th___ day of ___July___ 2021.

_____
Sharon L. Ovington
United States Magistrate Judge